## NEAL v. CINCINNATI UNION STOCK YARDS CO.

1. CORPORATIONS CHARGEABLE WITH COMPOSITE KNOWLEDGE OF SERVANTS.

A corporation is chargeable with the knowledge that comes to each of its servants within the scope of the duties of each of the servants respectively, and with the composite knowledge that comes to it through the channels of its several servants. Hence, when an Ohio stockyard company permitted southern cattle shipped to it from a district infected with Texas fever to remain in "native" pens, contrary to federal regulations and the provisions of Sec. 4211-19 Rev. Stat. *et seq.*, and an injury resulted therefrom to a purchaser, without fault on his part, if a servant of the company, in the usual course of his duties, knew the cattle came from the infected district but did not know they were placed in "native" pens, and another servant, in the usual course of his duties, knew they were placed in "native" pens, but did not know they came from the infected district, the company is chargeable with the combined knowledge of the two servants and liable for damages resulting from their negligence.

2. QUAERE AS TO BURDEN OF PROOF.

Whether physical facts of a violation of provisions of Ohio statutes, and resultant injury to plaintiff being shown make out a *prima facie* case and places burden of proof upon defendant company to show itself without fault, *quaere*.

An action was brought in the common pleas court of Hamilton county. by Neal v. Cincinnati Union Stock Yards Co. for $23,500 damages. The facts of the case, briefly stated, were these: On April 9, 1899, a certain lot of southern cattle, containing about one hundred and fifty-eight head, infected with *boophilus bovis*, or southern cattle tick, were shipped by rail from the town of Grenada, Miss., to Cincinnati, Ohio, by way of Louisville, Ky.; on April 12, 1899, the same cattle were reshipped from Louisville, Ky., to Cincinnati, Ohio, over the Baltimore & Ohio Southwestern Railroad, and each of the waybills delivered to defendant for the cars containing said cattle had upon their face a statement that said 'cattle were shipped from Grenada, Miss., which was within the "infected" or "scheduled" Texas fever district, and as to which federal regulations and provisions of Sec. 4211-19 Rev. Stat. *et seq.* applied.

Plaintiff alleged that, relying on the fact that defendant had said cattle in "native" cattle pens, and would, in accordance with the federal and state laws, keep southern cattle in "schedule" pens, and having no knowledge that said cattle had been shipped from Mississippi or were afflicted with southern cattle tick, on April 14, 1899, purchased ninety-one head of cattle out of said "native" pens, and shipped them to his grazing lands in Lawrence county, Ohio, for the purpose of fattening them for the fall market of 1899; that said cattle were placed among four hundred

head of other cattle belonging to plaintiff, and that shortly thereafter Texas fever broke out among them, disseminated by the southern cattle ticks upon the ninety-one head of cattle bought by him at defendant's stockyards, killing two hundred and forty of the said four hundred cattle, and rendering the remaining one hundred and sixty head worthless; that said defendant knew that said cattle, so placed in "native" pens, were southern cattle, and knew, or could have known by the exercise of ordinary diligence, that said cattle were infected with southern cattle ticks, and further knew that said cattle would disseminate, by reason of said ticks, Texas fever among cattle with which they came in contact; and that defendant, notwithstanding such knowledge, permitted said cattle first to be placed in "native" pens, and then to be sold to him, knowing that they would be placed by him with other cattle.

On the trial it was shown that one Edmunds, a clerk in the employ of the stock yard company, in its main office, knew or should have known from the waybill, that the cattle came from Grenada, Miss, but he did not know that the car in which they arrived was not placarded as required by law, and he was ignorant that they had been placed in "native" pens. The foreman of the unloading crew of the defendant company placed the cattle in "native" pens. He understood that the cattle came from Louisville, Ky., which was not in the quarantined district.

The intervention of a jury was waived, and the case tried to the court below, resulting in a verdict for the defendant company on the ground that it had not received sufficient knowledge of the character of the cattle to make it liable.

For the pleadings and a fuller statement of facts in this case see Neal v. Stockyard Co. 12 Dec. 533.

W. D. James and A. R. Johnson, for plaintiff in error.

W. D. James, for the plaintiff in error:

As to liability. Cooley, Torts 780 and 790; Conrad v. Crowdson, 75 Ill. App. 614; Rose v. King, 49 Ohio St. 213, 224 [30 N. E. Rep. 267; 15 L. R. A. 160]; Wharton, Negligence Sec. 443; Couch v. Steele, 3 Ell. & Bl. 414; Hayes v. Railway Co. 111 U. S. 228 [4 Sup. Ct. Rep. 369]; Taylor v. Railway Co. 45 Mich. 74 [7 N. W. Rep. 728]; Chamberlaine v. Railway Co. 1 Exch. —; Ballance v. Falle, 13 Q. B. D. 109; Britton v. Cotton Co. L. R. 7 Exch. 130; Holmes v. Clark, 6 Hurl. & Nor. 348; Fawcett v. Railway Co. 16 Q. B. 610; Sec. 4212 Rev. Stat.; Preston v. Compton, 30 Ohio St. 299, 304; Knapp v. Bailey, 79 Me. 195 [9 Atl Rep. 122]; 16 Am. & Eng. Enc. Law 790.

Neal v. Cincinnati Union Stock Yards Co.

On the question of implied notice. 16 Am. & Eng. Enc. Law 195, 795, and 419 and cases there cited.

The plaintiff was not guilty of contributory negligence. Shearman & Redfield, Negligence Sec. 3044; Beach, Con. Neg. 39 and Secs. 22, 36, 38 and 67; Deering, Negligence Sec. 16; Wharton, Negligence Sec. 423; Cleveland, C. & C. Ry. Co. v. Crawford, 24 Ohio St. 631, 640.

**John W. Warrington,** for defendant:

As to alleged negligence on the company's part. Hannibal & St. J. Ry. v. Husen, 95 U. S. 465; Philadelphia & S. M. S. S. Co. v. Commonwealth, 122 U. S. 326 [7 Sup. Ct. Rep. 1118]; Salzenstein v. Mavis, 91 Ill. 391; Chicago & A. Ry. Co. v. Erickson, 91 Ill. 613; State v. Duckworth, 51 Pac. Rep. 456 (Idaho).

The state had no right to impose regulations upon carriers more drastic than the federal requirements. Bowman v. Railway Co. 125 U. S. 465; Lake Shore & M. S. Ry. Co. v. State, 12 O. F. D. 376 [173 U. S. 285; 19 Sup. Ct. Rep. 465]; 23 U. S. Stat. at Large, 1885-5, p. 31, Chap. 60; rules and regulations secretary of agriculture, Ex. A. (Par. C); and as to the assumption that the cattle were infected with a germ. Davis v. Walker, 60 Ill. 452.

The degree of care is higher than is ever imposed upon a bailee like the defendant. Delaware, L. & W. Ry. Co. v. Stock Yard Co. 45 N. J. Eq. 50 [17 Atl. Rep. 146; 6 .L. R. A. 855]; Schouler, Bailments (3 ed.) Sec. 353; Sec. 3876 Rev. Stat.

A statutory declaration that a thing shall not be done does not create a liability in favor of individuals. Clark & Lindsell, Torts (2 ed.) 26.

Edmund's agency was such that constructive notice or knowledge cannot be ascribed through him. Mechem, Agency Secs. 725 and 718; Pennoyer v. Willis, 36 Pac. Rep. 568 [26 Ore. 1]; Trentor v. Pothen, 49 N. W. Rep. 129 [46 Minn. 298]; Labbe v. Corbett, 6 S. W. Rep. 812 [69 Tex. 503]; Lieberman v. Bank, 48 L. R. A. 514 [45 Atl. Rep. 901; 2 Penn. (Del.) 416].

**JELKE, J.**

A part of the court incline to the opinion that the physical facts of a violation of the provisions of the Ohio statutes and resultant injury to plaintiff being shown, makes out a *prima facie* case and puts the burden upon the defendant company to show itself without fault.

For the purpose of the consideration of this case, however, we will adopt the rule as to liability most favorable to defendant in error, viz.:

If the defendant company knowingly permitted these one hundred and fifty-four head of southern cattle to remain in native pens for any other purpose than to be fed and watered or for immediate slaughter, and to be dealt with as native cattle, and injury resulted to plaintiff, Neal, without fault on his part, then the defendant company is liable.

So far as any knowledge could come from a mere inspection of the cattle, we put plaintiff and defendant on the same plane, and hold both alike free from negligence.

It appears that these cattle were in the native pens from about six-thirty o'clock P. M., of April 12, until about one o'clock P. M., of April 14; that Edmunds received and checked off the bills of lading by eight o'clock on the morning of the thirteenth, and that these bills showed these cattle to be from the southern or schedule district. These facts are without dispute, and it is from these facts that the court below, in our opinion, made an erroneous deduction.

Because the foreman of the unloading crew did not know, in the absence of the *indicia* required by statute, and not in the course of his duties having anything to do with the bills of lading, and Edmunds in the course of his duties not knowing where the cattle were, the court below held that the defendant company could not be held in law to know that these southern cattle were in native pens. While the corporation only is chargeable with that knowledge which comes to each of its servants within the scope of the duties of each of its servants respectively, the corporation as the common head, brain center so to speak, must be held to have the composite knowledge which comes to it through the channels of its several servants. It is not necessary that any one servant should know all the facts. If it were, all a corporation would have to do would be to limit the scope of the duties of each servant, and the corporation could never be held to know all about anything.

Because the hand cannot distinguish color, or the eye apprehend hardness, are we to say that a man cannot be charged with the composite knowledge that iron is grey and hard? Or could a corporation by limiting the number and authority of its agents so deprive itself of avenues of approach or information that it could not know certain palpable facts at all? No. Between eight A. M. of the thirteenth and one P. M. of the fourteenth of April, the defendant company must be held to have known both what Edmunds knew in the usual course of his duties and what the foreman of the unloading crew knew in the usual course of his duties, and putting this knowledge together the company must be held to have had culpable knowledge of the wrongful fact.

We are, therefore, of the opinion that the judgment of the common pleas court should be reversed.

We are further of opinion that in the trial of a cause like this the distinction between issues of fact and law is better preserved by a trial with jury.